331 So.2d 11 (1976)
STATE of Louisiana, Appellee,
v.
Harry ROBERTS, Appellant.
No. 56952.
Supreme Court of Louisiana.
March 29, 1976.
Rehearing Denied May 14, 1976.
*12 Garland R. Rolling, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of first degree murder, La.R.S. 14:30 (1973), and sentenced to death. Upon his appeal, he relies upon seventeen assignments of error.
The most arguable contentions are raised by assignments 13, 15, and 17 (adopting the enumeration in the appellant's brief). These relate respectively to: the denial of a mistrial based upon the prosecutor's reference to a juvenile offense of the defendant; the denial of pre-trial oyer of a revolver and bullets used in the killing for purposes of ballistic testing; and the excusing, upon the prosecutor's challenger for cause, of twenty-five jurors on the basis of their views relating to imposition of the death penalty.
Context Facts
The evidence of the state's witnesses proved:
At about 6:30 p.m. on Mardi Gras, 1974, the defendant Roberts became involved in a quarrel with his neighbors. Drawing a pistol, he fired blindly at them, striking a 13-year-old boy.
Responding to a radio call, Police Officers Tobin and McInerney arrived at the scene within minutes. Roberts was still in sight, about a block away. He was walking swiftly. The police officers followed him in their vehicle through the crowded carnival streets.
The police vehicle caught up with Roberts within three blocks. When the officers called to him, Roberts approached, pulled out a pistol and shot the driver Tobin as he was opening his door, and shot at *13 officer McInerney as he was descending from the passenger side. When McInerney fired back (hitting Roberts in the left leg), Roberts shot and killed the police officer.
Roberts left a trail of blood. He was located within a block of the shooting. He had broken into a home and had telephoned his mother to come for him.
The gun used in the killing was found at the rear of an alleyway by which Roberts had approached the home into which he had broken. His fingerprints were found on the weapon. Blood drippings were near the pistol, as they were at the entrance to the alleyway.
Roberts fought the arresting police desperately when they arrived at the house.
Roberts took the stand in his own defense. He admitted the neighborhood quarrel, but denied that he had used a gun (or that he had ever possessed one). He stated that, while leaving the scene, he had been shot in his leg by a party unknown.
Roberts admitted that he had gone down the alley to the house in which he was found. He indicated that his use of the telephone was with the consent of the home's inhabitants, in order to locate his mother and to inform the police of the shooting. (The inhabitants testified that Roberts had broken into their home through a side-door.)
The essence of the accused's defense was that some other man had shot the policeman a block or so away from the shooting of himself by a party unknown.
We do not find his assignments of error to have merit, for the following reasons:
Assignment 13: The prosecutor's reference to a juvenile offense
The accused took the stand in his own defense. Upon cross-examination, the prosecutor asked him if in 1970 he had pleaded guilty in juvenile court to theft and shoplifting. The district court sustained a defense objection to the question and admonished the jury to disregard the question.
As the defendant points out, by express statutory provision, an adjudication that a juvenile has committed an offense is not a determination that the child was a criminal, "nor shall such adjudication be deemed a conviction." La.R.S. 13:1580(5) (1974). It was thus improper impeachment of the appellant's credibility, since only a Conviction of a Crime may be used for such purpose. La.R.S. 15:495. (Furthermore, juvenile records are ordinarily privileged information. La.R.S. 13:1586 (1950).)
The defendant contends that the admonition to the jury to disregard the prosecutor's question was insufficient to cure the prejudice resulting from the prosecutor's reference to the inadmissible juvenile offense. He contends that La.C.Cr.P. art. 770 mandatorily requires a mistrial when the prosecutor "refers directly to . . . another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."
The mandatory mistrial required by the code article within its literal terms includes only improper references to "crimes", not to juvenile adjudications. While, as the trial court held, the prosecutor's reference to the inadmissible juvenile offense was improper, it is not governed by Article 770 (requiring mistrial) but rather by Article 771. The latter provision permits an admonition to the jury to cure the prejudice, providing that the trial court is satisfied that an admonition rather than mistrial is sufficient to assure the defendant a fair trial.
We find no abuse of the trial court's discretion in denying a mistrial:
As noted, the trial court sustained the objection to the question and promptly admonished *14 the jury to disregard it. The question concerned a single non-violent petty offense of a juvenile. As permitted by La.R.S. 15:495, the jury additionally received evidence of the defendant's conviction of two post-juvenile crimes, for purposes limited to impeaching credibility.
The admonition of the trial court to disregard the question cured, in our opinion, whatever additional prejudice the accused might otherwise have sustained by the question's inference that he had also been convicted of a petty offense while still a juvenile.
Assignment 15: Denial of pre-trial oyer of pistol and bullet
At the trial, the pistol found in the vicinity was, by ballistic tests, identified as the weapon which fired the bullet which killed Officer McInerney and which was found in his body.
By pre-trial motion, the accused had sought oyer of the pistol and bullet for the purpose of making ballistic tests. The trial court denied the motion on the authority of State v. Barnard, 287 So.2d 770 (La.1973). However, subsequent to the trial, the federal courts have set aside the Barnard conviction. The federal Fifth Circuit held that the denial of pre-trial ballistic tests, under the circumstances there shown, was a denial of the right to a fair trial and adequate preparation of a defense required by federal due process. Barnard v. Henderson, 514 F.2d 744 (CA 5, 1975).
In Barnard, a pistol was used in the murder. The unknown killer left the scene with the weapon. Subsequently, a pistol was located in Illinois which had there been sold by the defendant. Ballistic tests identified the slug found in the victim as having been fired by that pistol.
In Barnard, the issue thus was whether a pistol, identified as the defendant's and in his possession after the shooting, had fired the fatal bullet. Due process fair-trial requirements were held to have been violated by the denial, upon request, of pre-trial access for purpose of completing difficult ballistic testing.
In the present case, however, the ballistic testing is not shown to have been useful for the accused's defense. The accused's defense did not deny that the pistol found in the alley nearby the shooting had fired the fatal shot. His contention, rather, was that he himself had no connection with the pistol which had been so used.
We are unwilling to reverse a conviction because of the denial of opportunity for pre-trial ballistic testing where, under the circumstances of the actual case, such ballistic testing is not shown to have been relevant to any issue of the accused's defense. Even if it were error to have denied the pre-trial testing to the defendant, the denial is not claimed nor shown to have caused him any prejudice in the preparation of his defense under the particular issues of the present prosecution.
Assignment 17: Voir dire examination of prospective jurors as to their attitudes on the death penalty
La.C.Cr.P. art. 798(2) (1968) provides that the State may challenge for cause any prospective juror in a capital case who "makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt."
Before the 1968 amendment so limiting the state's right to challenge for cause, the State had been entitled to challenge for cause additionally any prospective juror in a capital case who merely had "conscientious scruples against the infliction of capital punishment." La.C.Cr.P. art. 798(2) (1966). The United States Supreme Court had previously held that exclusion of jurors with merely conscientious scruples against capital punishment deprived an accused *15 in a capital case of the jury representative of the community to which he is constitutionally entitled. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
In the instant case, the trial court sustained the State's challenges for cause as against twenty-five veniremen who expressed fixed opposition to imposition of the death penalty under any circumstances.
The defendant contends that two of them (Halphen and Blazio) did not make their opposition to the death penalty unmistakably clear, so as to entitle the State to challenge them for cause. However, we have reviewed their voir dire examinations and find no error in the trial court's determination that, despite some initial ambiguity, the ultimate firm conclusion of the respective veniremen was that they would not impose the death penalty in the instant case under any circumstances.
Additionally, the defendant argues that the removal from a jury service of twenty-five veniremen opposed to the death penalty deprived him of the jury representative of the people to which an accused is constitutionally entitled. He points out that, under rulings of this court, a jury is not concerned with the penalty imposed for a conviction but only with whether the facts it finds proved to fit the statutory definition of the crime for which convicted. State v. Selman, 300 So.2d 467 (La.1974); State v. Blackwell, 298 So.2d 798 (La.1974). Thus, he contends, to permit challenge for cause of a venireman because of his views about a statutory penalty is arbitrarily to exclude him from the trial jury for no reason related to his function as a juror.
Nevertheless, despite these persuasivelyurged contentions, by La.C.Cr.P. art. 798(2) our legislature has permitted exclusion for cause of those prospective jurors who will under no circumstances impose a death penalty mandatorily required when an accused is found guilty of the criminal conduct with which charged.[1]
In Witherspoon, the United States Supreme Court recognized that there is no constitutional bar to excluding from jury service those who will in no circumstances concur in a verdict of guilt because of their refusal to apply the extreme penalty required by statute upon conviction.
We do not find error presented by this assignment.
Other Errors Assigned
The other assignments of error are clearly without merit.
For the most part, they concern evidentiary rulings patently correct: Assignment 1 (question at pre-trial motion properly held irrelevant); Assignment 3 (question at pre-trial hearing properly held not to call for a legal conclusion); Assignment 6 (qualified medical expert properly held competent to testify concerning the path of the bullet through the victim's body); Assignments 7, 8, 9 (blood, firearms, and fingerprint witnesses properly held qualified as experts); Assignment 10 (coroner's report and proces verbal properly held admissible);
Assignment 11 (physical evidence and photographs admitted after proper foundation; defendant assigns no reason to the contrary); and Assignment 14 (miscellaneous rulings sustaining or overruling objections to four minor evidentiary matters correctly admitted or denied admissibility).
The motion for a directed verdict also was properly denied (Assignment 12). Among other reasons, the state's eyewitness testimony identified the defendant as the killer of the police officer.
*16 Likewise, no merit is possessed by the assignments attacking certain trial court's rulings on constitutional grounds:
Assignments 2 and 5 (Motion to suppress identification): Officer Tobin, who was shot at almost pointblank range, identified the defendant as the man who had shot both him and the decedent. The police witness is shown to have had full opportunity to observe and identify his attacker.
The motion to suppress his identification as tainted is based upon the chance passing at Charity Hospital emergency room of the two wounded men, Officer Tobin and the defendant Roberts. When the policeman saw the other, he at once remarked, "That's the man who shot me. I'll never forget his face."
No showing whatsoever is made that the face-to-face encounter at the hospital was pre-arranged or that it in any way was intended or did influence the officer's ability to identify Roberts as his assailant, which was independently based on their actual encounter at the time of the shooting.
Assignment 4 (Motion to suppress revolver): The revolver used in the shooting was found in an alley. It was just outside the house in which the defendant had taken refuge after the shooting incident.
The motion to suppress the weapon is based on the contention that it was seized as the product of a warrantless search in the absence of probable cause. For many reasons, the motion is without merit, including: The police officers looking for the wounded perpetrator of a murder committed minutes before, were entitled to follow a bloody residue into an alley within a block of the murder and to pick up an abandoned pistol in plain view in the alley. See, e. g., State v. Nine, 315 So.2d 667 (La.1975).
Assignment 16 (Motion to quash on grounds of unconstitutionality): We have rejected similar attacks upon the constitutionality of the death penalty provided for first degree murder, La.R.S. 14:30, as enacted by Act 109 of 1973. See, e. g., State v. Hill, 297 So.2d 660 (La.1974).

Decree
For the reasons assigned, we affirm the conviction and death penalty.
AFFIRMED.
SUMMERS, J., concurs and assigns reasons.
CALOGERO, J., concurs, having reservations as to the majority's treatment of bill No. 13.
DIXON, J., dissents from the ruling on the constitutionality of the death penalty under United States Supreme Court standards, but otherwise subscribes fully to the opinion.
SUMMERS, Justice (concurring).
I concur in the result of this opinion because I cannot approve the rejection of a number of contentions by the Court when no reasons are assigned therefor in this death penalty case.
NOTES
[1] Further, as perhaps recognized by this statute, in capital cases the jury has been charged as to the capital consequences of its verdict, and counsel have been permitted to argue this extreme penalty. No decision of this court has intimated that this is not appropriate.