545 So.2d 1144 (1989)
STATE of Louisiana
v.
Troy A. WILLIAMS.
No. 88-KA-0033.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1989.
*1145 Harry F. Connick, Dist. Atty., Janet Ahern, Asst. Dist. Atty., New Orleans, for plaintiff.
Birch P. McDonough, McDonough & McDonough, New Orleans, for defendant.
Before BARRY, KLEES and ARMSTRONG, JJ.
BARRY, Judge.
The defendant was charged with two counts of attempted armed robbery, La. R.S. 14:27 and 14:64, and attempted second degree murder, La.R.S. 14:27 and 14:30.1. A twelve member jury found him guilty of the armed robbery counts and he was sentenced to ten (10) years at hard labor on each count, concurrent, without benefit of parole, probation or suspension of sentence. He was acquitted of attempted second degree murder.

FACTS
Early on the morning of February 7, 1987 the defendant was driving through the French Quarter with Derrick Norbert and Andrew Green as passengers. Green asked to be let out and Norbert joined him. Green and Norbert stopped Dwann and Carlos Kibodeaux as they attempted to enter their Chartres St. residence. Green pointed a gun at Mr. Kibodeaux and the men demanded money. Norbert grabbed for Mrs. Kibodeaux's purse and when Mrs. Kibodeaux screamed, Mr. Kibodeaux turned toward his wife. When Green demanded that he stop, Mr. Kibodeaux "whirled" around and was shot. Green and Norbert ran toward Esplanade Avenue.
Gary Helffrich was standing in front of a grocery store on Barracks and Decatur Sts. and heard screams. He looked around the corner and saw Green and Norbert running down Barracks toward Decatur and a Mustang automobile was on Decatur. The automobile, driven by the defendant, stopped, passed Green and Norbert, turned left on Gov. Nichols St. and Green and Norbert got into the car. Helffrich noted the license number and gave it to police. *1146 The car was owned by the defendant's mother.
Green, who testified for the State, pled guilty prior to trial to two counts of attempted armed robbery and one count of attempted second degree murder. After trial Green withdrew his plea and pled to two counts of attempted armed robbery. Norbert pleaded guilty to two counts of attempted armed robbery. A nolle prosequi was entered on the attempted second degree murder count.
Green testified the defendant knew of the planned robbery. Norbert testified that he and the defendant did not know Green had a gun or was going to commit a robbery. Norbert said he was following Green and the robbery was in progress when he caught up with him.
The defendant admitted that he owned the gun used by Green and the gun was in the car that evening. He corroborated Norbert's version of the facts.
Officer Hesni testified that he went to the defendant's home because the license number (given by Helffrich) was registered to the defendant's parents, Mr. and Mrs. Williams. After Hesni orally advised the defendant of his rights, he told Hesni he was with friends and went to a party, then to the French Quarter. The defendant denied any knowledge of a planned armed robbery.
Officer Hesni stated that he and other detectives left the Williams' residence and approximately one hour later Mr. Williams asked them to return. Hesni testified that the defendant, Norbert and Mr. and Mrs. Williams were present and he orally advised the defendant and Norbert of their rights. The defendant and Norbert related the details concerning the robbery and named Green as the "trigger man." Hesni stated the defendant admitted he knew Green and Norbert were going to commit a robbery.
Hesni said he took the defendant's typewritten statement at the police station in the presence of the defendant's parents.
Mr. and Mrs. Williams testified they did not witness the written statement which was introduced over objection.
Several character witnesses and one of the investigating detectives testified for the defense.

ASSIGNMENT # 1
The defendant argues that he was deprived of effective assistance of counsel.
This assignment is based on his counsel's failure to move for a mistrial based on the State's cross-examination of his character witnesses as to their knowledge of the defendant's juvenile arrest on a firearms charge. The defendant urges that La.C.Cr.P. Art. 770 requires a mistrial.
La.C.Cr.P. Art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

. . . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Whether defendant's counsel was ineffective turns on the admissibility of the evidence, an issue not argued in defendant's brief.
Cross-examination of a defendant's character witness may extend to his knowledge of particular misconduct, a prior arrest or other act relevant to the moral qualities pertinent to defendant's crime since such an inquiry exposes the witness' possible lack of knowledge of defendant's character and his standard of evaluation. State v. Rault, 445 So.2d 1203 (La.1984), cert. denied *1147 Rault v. Louisiana, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984).
In State v. Johnson, 389 So.2d 372 (La. 1980) safeguards formulated by the Superior Court of New Jersey regarding examination of character witnesses were adopted. The trial court should make a preliminary inquiry out of the presence of the jury and satisfy itself
(1) that there is no question as to the fact of the subject matter of the previous arrest, conviction or other pertinent misconduct of the defendant;
(2) that there is a reasonable likelihood that the previous arrest, conviction or pertinent misconduct would have been bruited about the community or neighborhood prior to the alleged commission of the offense on trial;
(3) that it did not occur at a time too remote from the present alleged offense;
(4) that it concerned the specific trait involved in the offense at trial; and
(5) that the examination is phrased in terms such as "Have you heard" not "Do you know".
If interrogation is allowed the jury should be informed of its exact purpose at the conclusion of the examination or in the jury charge.
A review of the record shows that Johnson's guidelines were scrupulously followed. Cross-examination regarding the defendant's prior arrest was admissible.
This assignment has no merit.

ASSIGNMENT # 2
The defendant argues the trial court erred by denying the opportunity to cross-examine Green about his juvenile record.
Green was a juvenile at the time of the robbery, turned seventeen before trial, and had no adult record.
Juvenile proceedings are confidential proceedings. See La.C.J.P. Arts. 14 E, 122 and 123; La.R.S. 13:1586.
However, La.C.J.P. Art. 123 provides in part:
B. For good cause, the court may order disclosure of records and reports of the court, probation officers, and law enforcement agencies to any person, agency, institution or other court upon a particular showing that the information is relevant to a specific investigation or proceeding.
C. The court, the district attorney, the sheriff, or the chief law enforcement officer of any jurisdiction may release the record of arrests, convictions, or adjudications of:
(1) Anyone previously adjudicated a delinquent and who is subsequently arrested or charged with any crime or delinquent act.
(2) Any child adjudicated a delinquent for committing a delinquent act which if committed by an adult would be a felony, or a misdemeanor against the person, or a misdemeanor involving a dangerous weapon.
Therefore, disclosure is permitted under certain circumstances.
In State v. Toledano, 391 So.2d 817 (La. 1980) the trial court denied defendant's motion to produce the rap sheet of the prosecution's key witness, a juvenile co-defendant who pleaded guilty to a lesser offense. The issue was whether the rap sheet should have been disclosed since it was exculpatory, undermining the credibility of the witness. On rehearing the court found:
Under circumstances such as those presented in this case, the trial court, upon request by defense counsel for specific relevant evidence with possible impeachment value, must order submission of the witness' record of juvenile adjudications for an in camera inspection to determine its materiality. The question in each case, in which such a request is made, is whether the witness' juvenile adjudication has such discrediting value that there is reasonable likelihood it would have affected the verdict and thus, under [United States v.] Agurs [427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ] and La. Const. Art. 1, § 16 (1974), must be viewed as evidence favorable to the accused. (citations omitted).
Toledano, 391 So.2d at 820.
The record does not show whether the trial court reviewed Green's "rap sheet" *1148 and determined that it was not of such discrediting value that there was a reasonable likelihood that it would have affected the verdict, or whether the court refused to permit cross-examination without knowledge of what that record might be.
Importantly, the defendant stated he knew that Green and Norbert were going to commit a robbery when they got out of the car.
The following colloquy is in the defendant's statement:
Qdo you wish to give a statement concerning your knowledge concerning an armed robbery which occurred earlier tonight?
Ayes
Qin your own words tell me what happened tonight
AI was riding in a car in the French Quarter. I let Andrew and Derek out the car and then after that I was riding arround [sic]. Then they came to the car and they jumped in the car. We then left and drove off. We rode down St [sic] Bernard and Derek threw the gun out the window.
Qwhen you stated that Andrew and Derek got out of the car, where were they going?
Athey were going arround [sic] the block to commit a robbery
Qdid you see the people that Andrew and Derek were going to rob?
AI let them out the car and they walked behind the couple then I drove off. I was just driving arround [sic], I didn't know where I was going to met [sic] them at. They just ran into me.
Qwhen Andrew and Derek got out of the car were either of them armed?
Ayes, Andrew had a gun. It was mine.
Qdid you give Andrew the gun so that he [sic] commit an armed robbery?
AFirst when we went to a party, Andrew was holding the gun. Then we went straight to the quarters [sic].
Qwhen Andrew and Derek got out of your car with your gun, did you know that they were going to rob the couple you saw walking?
Ayeah
QDid Andrew or Derek say anything when they got back in the car?
AYeah. Andrew said he shot the man. Then I didn't say much. We were silent kinda.
QWhat happened to the gun?
Athe gun was thrown out of the window. We were riding down St [sic] Bernard St [sic] and Derek threw it out of the window.
Qdid you see the actual armed robbery?
Ano
Qdid you hear the gun shot?
Ano
Qwhose car were you driving in?
Amy mothers [sic] car
Qis your mothers [sic] car a 1980 Mercury Capri, orange in color bearing license number 880b950?
AI don't know the license plate, but thats [sic] it
The defendant's admitted prior knowledge is corroborated by Officer Hesni's testimony.
Further, Green's testimony was impeached by inquiry into the circumstances surrounding his plea, and into his admitted desire to make sure that Norbert and the defendant also served time because they implicated him.
Considering the defendant's inculpatory statement, corroboration that he made such a statement, and that the defendant was able to impeach Green, we are satisfied Green's juvenile record would not have affected the verdict.

ERRORS PATENT
The defendant's motions for a new trial and post judgment verdict of aquittal were denied on July 10, 1987. The defendant was sentenced on the same day. Twenty-four hours did not lapse as required by La.C.Cr.P. Art. 873:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is *1149 filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
The minute entry stating "defendant waived all delays" is contradicted by the transcript and docketmaster which do not mention a waiver. Whenever there is a discrepancy the transcript controls over a minute entry. State v. Tarto, 517 So.2d 1216 (La.App. 4th Cir.1987).
Although the defendant did not object or urge the error on appeal, the trial court's failure to abide by the twenty-four hour delay is discoverable by mere inspection of the record. La.C.Cr.P. Art. 920(2).
Nonetheless, the twenty-four hour delay relates only to sentencing, State v. White, 404 So.2d 1202 (La.1981) concurring and dissinting in part, 483 So.2d 1005 (La.1986), and is considered harmless when no prejudice is shown, State v. Warren, 538 So.2d 1036 (La.App. 4th Cir.1989).
The sentence was not challenged and no prejudice is shown. This error is harmless.
The conviction and sentence are affirmed.
AFFIRMED.