STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-350

STATE OF LOUISIANA

VERSUS

XAVIER WATSON

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 22-K-1899-A
HONORABLE GREGORY JAMES DOUCET, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**CHIEF JUDGE**

**********

Court composed of Elizabeth A. Pickett, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT-APPELLANT:**
     Xavier Watson

**Chad Pitre**
**District Attorney, Twenty-Seventh Judicial District**
**Kathleen E. Ryan**
**Assistant District Attorney**
**P.O. Box 1968**
**Opelousas, LA 70571**
**(337) 948-3041**
**COUNSEL FOR APPELLEE:**
     State of Louisiana

**PICKETT, Chief Judge.**

## FACTS

On May 4, 2022, at approximately 10:00 p.m., Eunice police officers received an alert regarding a shooting. Upon arrival on the scene, police discovered a fourteen-year-old male with a gunshot wound to the abdomen. A civilian drove the victim to a hospital to avoid any delay in treatment. Although the area was very dark, officers observed blood and bullet casings in the road, along with flip-flops and three bicycles.

An officer, Keith Peters, went to the hospital and spoke to the victim, who identified the shooter by the nickname "Xa." Police attempts to locate the suspect were initially unsuccessful.

Detective Victor Fontenot interviewed two witnesses, one of whom was a juvenile. Detective Fontenot learned there were gunshots in the area prior to the shooting at issue. The victim and the juvenile witness were riding their bicycles in the road, and the victim asked the defendant why he was shooting. Another shot rang out, and the victim fell to the ground. The adult witness was the victim's aunt. She testified that the defendant told her, as he left the scene, that he shot the victim because "they were fucking with me."

Detective Fontenot also interviewed the defendant's girlfriend, Tori Janice. She used her cell phone to show Detective Fontenot pictures of the defendant, as the detective had not seen him before. In the course of the investigation, police determined the flip-flops at the scene belonged to the victim and the juvenile witness. All the bullet casings at the scene were of the same caliber. Investigators did not locate the weapon used in the crime.

Elvin Thomas testified that he was sixteen years old in May 2022. On May 4 of that year, he and the victim, C.V., helped a relative of the victim move into a

house.[1]  They helped with moving between about noon and two in the afternoon. The victim's relative paid them, and they went to the store and bought some food. Afterward, they sat in front of Thomas's mother's house.  Later, Thomas said he and the victim saw the defendant in the area.  Thomas sat on the porch with some relatives.  The victim sat on a bicycle in the street.  The witness saw the victim and the defendant talking but did not hear what they said.  Thomas turned to speak with people on the porch.  As his back was to the street, he heard gunshots.  He rushed to get his nieces and nephews into the house, then he ran out into the street to help the victim's grandmother and "nanny" get him into a car.  According to Thomas, the grandmother drove the victim to the hospital.  Thomas saw the defendant flee the scene with a gun in his hand.  Thomas noted that there had been no prior trouble or disagreements between the victim and the defendant.

On cross-examination, Thomas reiterated that his back was turned when he heard the gunshot, but he was in the yard not on the porch.  On redirect, Thomas noted that one of his friends on the porch had a gun and fired at the defendant as he fled.

The victim, C.V., also testified.  On the night of the shooting, he was fourteen years old. He testified he was not with Elvin Thomas on the day of the shooting and did not help move any furniture.  He noted that he was high from smoking marijuana at the time of the offense.  Also, he testified the shooter's face was covered.  Thus, the victim indicated he could not identify the defendant as the man who shot him.  He admitted to having accidentally shot himself in the knee in a separate incident but affirmed that in the incident at issue, another person shot

---

[1] We use juveniles' initials to protect the identity of minor victims. La.R.S. 46:1844(W).

him.  He was also shot in another incident a month later, but at trial he displayed a scar from the incident at issue.

C.V.'s testimony that he could not identify the shooter differed from his earlier testimony, which suggested he knew who the shooter was.  He stated that as he was about to bicycle to his aunt's house to take her some food, he heard gunfire.  He approached a man at the corner and asked that man if he heard the gunshots.  The victim indicated that he recognized the person from seeing him in the area at various times before the offense. After C.V. asked the man about the gunshots, C.V. then heard more shots, then realized that he had been hit. The victim did not see the gun but stated the shots came "out of his jacket."  C.V. noted that although he had previously seen the man around the area at various times, he did not know the man's name. He identified the defendant in court as the same man.  However, C.V. also said he could not see the shooter's face on the night of the offense because he had something over it.

The next witness was Ethel Fontenot, the victim's aunt. Although she could not remember the date of the incident, she remembered the events.  As she was walking to her car that evening, she heard gunshots.  After waiting a while, she walked toward the road.  The victim then passed by on a bicycle.  She saw him approach another male, and they "exchanged words."  The victim asked the other male about the earlier gunshots.  The other person shot him.  At that point, Mrs. Fontenot could not see the shooter's face because he was in a dark area.  She did not see the gun but saw the flash of gunfire. She went to her nephew, and the shooter walked past her as he left the scene.  She asked the man if he shot the victim, and he responded that people were "fucking with him."   She identified the shooter as "Xa" and stated that she had seen him speaking with the victim on various prior occasions.  Also, the victim identified the shooter to her as "Xa."

3

The state also adduced further testimony from Detective Fontenot. Detective Fontenot testified regarding statements the defendant made to police. The defendant claimed that he was not in the area at the time of the shooting, as he had moved to California two months prior to the event. Police retrieved him from California during the investigation. The defendant was aware of the shooting and that his name had been brought up in connection with it. The detective testified that Ms. Janice, the defendant's girlfriend, was still in Eunice on the date of the shooting. During the detective's interview of Elvin Thomas's mother around midnight on the night of the offense, she received a telephone call and advised Detective Fontenot that the defendant was in the neighborhood.

On February 20, 2024, the state filed an amended bill of information charging the defendant Xavier Watson with attempted murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1.[2] On the same date, the parties selected a trial jury. The jury began hearing evidence the next day and ultimately found the defendant guilty as charged. On May 2, 2024, the district court sentenced him to forty years of incarceration.

The defendant now appeals his conviction, assigning four errors.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENTS OF ERROR

1. The evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to find Mr. Watson guilty of attempted second degree murder beyond a reasonable doubt.

---

[2]The state filed the original bill on December 16, 2022. The amended bill simply changed the identification of the victim from "a juvenile" to "C.V."

4

2. The trial court's denial of Defense counsel's request to question a State's witness regarding the juvenile victim's prior criminal convictions deprived Mr. Watson of his constitutional right to cross-examine the witnesses against him.

3. The trial court erred in admitting prejudicial other crimes evidence when the court and both counsel previously had a prior discussion excluding such evidence.

4. The failure of the trial court to exclude inadmissible hearsay evidence violated Mr. Watson's constitutional right to a fair trial.

### ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant argues the trial evidence was insufficient to support his conviction. When a defendant makes such a challenge, the analysis is settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino,* 436 So.2d 559 (*citing State v. Richardson,* 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

As observed earlier, the jury convicted the defendant of attempted second degree murder. Attempt is defined by La.R.S. 14:27(A):

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

According to La.R.S. 14:30.1(A)(1), second degree murder is a homicide committed "[w]hen the offender has specific intent to kill or to inflict great bodily harm." Further, the jurisprudence has stated that an attempted murder conviction must be supported by proof of specific intent to kill. *State v. Deville*, 22-350 (La.App. 3 Cir. 11/23/22), 354 So.3d 99; *State v. Thomas*, 10-269 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, 565 U.S. 859, 132 S.Ct. 196 (2011).

The defendant makes two arguments: first, there was insufficient proof of his identity as the shooter. Second, if this court finds his identity was proved, there was insufficient proof that he had specific intent to kill.

As the defendant's first argument puts identity at issue, "the State is required to negate any reasonable probability of misidentification." *State v. Hughes*, 05-992, p. 5 (La. 11/29/06), 943 So.2d 1047, 1051. However, the state notes that a single witness's identification of an offender is sufficient to uphold a conviction. *State v. George*, 09-143 (La.App. 3 Cir. 10/7/09), 19 So.3d 614. As noted above, the state produced eyewitnesses, including the victim's friend, Elvin Thomas. Although Thomas's back was to the scene at the time of the shooting, he testified that he saw the defendant leave the scene with a gun. The victim initially appeared to identify the defendant as the shooter during direct testimony but then said the shooter's face was obscured. During cross-examination, the victim indicated that he could not identify who shot him. Mrs. Fontenot identified the defendant as the man who shot her nephew.

The combined testimony of Mr. Thomas and Mrs. Fontenot, discussed above, sufficiently support a rational conclusion that the defendant was the man who shot the victim. Mr. Thomas saw the defendant flee the scene with a gun in his hand; Mrs. Fontenot saw the shooting and spoke to the defendant as he left the

6

scene. Further, Officer Keith Peters testified that in the hospital, the victim identified the shooter as "Xa." Numerous references in the record indicate that "Xa" is the defendant's nickname.

There is a significant discrepancy between Thomas's testimony and the victim's testimony. Thomas indicated the pair had been together during the day helping move furniture, but the victim said he knew nothing about that. Also, there was testimony indicating that the area was dark at the time of the offense. Regarding such points, we note that a factfinder is free to believe some, none, or all of the testimony presented to it. *State v. Perkins*, 11-955 (La.App. 3 Cir. 3/7/12), 85 So.3d 810. Also, as mentioned in *Kennerson*, an "appellate court should not second guess the credibility determinations of the triers of fact[.]" *Kennerson*, 695 So.2d at 1371.

For the reasons discussed, this argument lacks merit.

The defendant's second argument is that the state failed to show he had the specific intent to kill the victim. Mrs. Fontenot testified that she witnessed multiple gunshots. The victim's testimony also indicated that the assailant fired at him more than once. Also, even though Thomas did not see the shooting, he testified that he heard multiple gunshots at the relevant time. The jurisprudence reflects that multiple gunshots are indicative of specific intent to kill. *See, e.g., State v. Thomas*, 19-409 (La.App. 1 Cir. 10/25/19), 289 So.3d 1030, *writ granted in part and remanded*, 19-1819 (La. 6/22/20), 297 So.3d 727;[3] *State v. Jones*, 11-399 (La.App. 3 Cir. 11/2/11), 76 So.3d 1274.

Thus, this argument and the assignment of error lack merit.

_____

[3]The writ was granted in light of *Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390 (2020), which requires unanimous jury verdicts for serious felony convictions.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant argues the district court erred by denying his motion to cross-examine the victim about his juvenile delinquency record. The defendant argues, as he did below, that the testimony of a police officer "opened the door" to an exploration of the victim's record.

During the testimony of Officer Trace Tilbury of the Eunice Police Department, he noted that at the scene he recognized the victim from "past encounters." At the close of the state's direct examination, the defendant's counsel asked to approach the bench. He then made his argument, seeking to question the witness regarding the victim's juvenile record. Counsel acknowledged that in a pretrial conference the court and the parties had discussed said juvenile record's inadmissibility. Defense counsel sought to pursue a theory that the victim was actually shot accidentally by another juvenile.

The state argued that under La.Code Crim.P. art. 609.1, only a conviction or convictions would be admissible. Arrests and details of convictions are not admissible. The defendant acknowledges that pursuant to La.Code Crim.P. art 609.1(F), juvenile adjudications are normally inadmissible in a criminal case.

The court denied the defendant's motion, expressing concern that evidence of the victim's delinquent past would confuse the jury and was irrelevant. The court also noted that the arrest under discussion did not occur until after the offense at issue. Also, the court stated its belief that the defendant would be able to elicit the information he was seeking from the juvenile witnesses and the victim's aunt.

The defendant seeks to leap the hurdle of La.Code Crim.P. art. 609.1 by citing *State v. Toledano*, 391 So.2d 817 (La.1980). *Toledano* has since been explained by a subsequent supreme court case:

8

When a defendant moves for production of the juvenile records of a witness the trial court is called upon to determine whether the impeachment value of these adjudications is outweighed by the state's interest in maintaining the confidentiality of juvenile records. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Toledano,* 391 So.2d 817 (La.1980). As we have explained: "The critical question in cases involving a witness's juvenile record and the sixth amendment right to confrontation is whether the defendant will be precluded from utilizing a method of impeachment that would be effective in the circumstances of his case were the juvenile record available to defendant." *State v. Smith,* 437 So.2d 802, 804 (La.1983). In reviewing juvenile records, the issue thus becomes whether the witness's juvenile adjudications have such discrediting value that there is a reasonable likelihood it would affect the verdict. *State v. Toledano, supra,* 391 So.2d at 820. That determination can only be made after an examination of the juvenile record by the trial court and preservation of that record for review. *State v. Hillard,* 398 So.2d 1057, 1060 (La.1981). In the instant case, the Court of Appeal denied the defendant's application for writs from the trial court's ruling denying production of the juvenile records of two of the State's primary witnesses without first reviewing those records, under seal, to determine if the trial court's ruling with respect to the materiality of the prior juvenile adjudications was the correct one. This was error. The Court of Appeal's writ denial in this matter is therefore vacated and this case is remanded to the Court of Appeal for the purpose of obtaining the juvenile records, under seal, and reviewing those records to determine whether the trial court erred in denying their production.

*State v. Perkins*, 03-1680, pp. 1–2 (La. 6/27/03), 852 So.2d 989, 989–90.

The defendant complains that the district court did not follow the *Toledano* procedure in this case. This appears to be true regarding the trial objection at issue. However, the victim's juvenile record and its potential admissibility were discussed in a pretrial proceeding. The pretrial conference may well have satisfied *Perkins* and *Toledano*. Unfortunately, this proceeding does not appear in the current record. Further, trial counsel did not proffer the relevant information and appellate counsel's brief does not indicate that counsel made any effort to obtain a copy of the juvenile record or a transcription of the pertinent pretrial proceeding. Thus, it is not possible to review the defendant's *Toledano*-based argument on the current record. It is possible that a related argument could be raised in the post-conviction relief process, where the record could be more fully developed.

9

The district court opined that defense counsel could glean the information he needed regarding his defense that it was an accidental shooting by another juvenile from the victim, Thomas, and Mrs. Fontenot. When Thomas testified, the defendant's counsel asked him if he and the victim were playing with a weapon and accidentally shot the victim. Counsel also asked Thomas if he feared admitting having a gun because possession of a weapon would violate Thomas's probation. The witness denied the allegations couched in these questions. The witness had previously noted that he wore an ankle monitor due to his being on probation.

In response to the defendant's cross-examination, the victim acknowledged that he was also shot in a separate incident a month after the incident at issue. The state objected as to relevance, but the court overruled the objection. In response to further defense questioning, C.V. testified that in an earlier incident, he shot himself in his knee. The defendant next asked whose gun he shot himself with, but the state again raised an objection as to relevance, which the court sustained.

The defendant questioned Mrs. Fontenot regarding whether she would try to help Thomas if he got in trouble. She denied that she was protecting Thomas. However, when the defendant asked squarely whether Thomas was actually the shooter, the court sustained the state's objection. The defendant did not object to the court's ruling.

The linchpin of the defendant's assignment of error appears to be that the district court failed to conduct an in camera inspection of the victim's juvenile record, ultimately depriving the defendant of the ability to cross-examine him regarding said record. As noted earlier, the pretrial hearing regarding the victim's juvenile record was not included in the current appeal. If there was any error, it would be harmless since it did not prevent defense counsel from thoroughly

10

pursuing his line of questioning as to whether this was an accidental shooting by another juvenile.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the defendant argues the district court erred by allowing prejudicial "other crimes evidence" to be admitted at trial. During his testimony, Detective Fontenot discussed his investigation of the offense at issue. He noted that he discovered information that the defendant had been firing his weapon in the neighborhood before the shooting of C.V. Further, the defendant may have fired at a dog that was barking at him. Defense counsel immediately asked to approach, and the parties discussed the matter with the district court in chambers. In the conference, the defendant sought a mistrial due to the reference to another crime.

Regarding mistrial, La.Code Crim.P. art. 770(2), states:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> . . . . .
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]

However, the jurisprudence states that a police officer is not a "court official" within the meaning of Article 770. *State v. Watson*, 449 So.2d 1321, 1328 (La.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939 (1985). The defendant also cites La.Code Crim.P. art 771(2):

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

11

. . . .

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Defendant also notes La.Code Evid. art. 404(B)(1):

**B. Other crimes, wrongs, or acts; creative or artistic expression**. (1)(a) Except as provided in Article 412 or as otherwise provided by law, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

In chambers, defense counsel stated that the matter had been discussed before trial, but one of the prosecutors stated the court had not ruled on the admissibility of the incident. There is nothing in the record which reflects this matter was considered by the court pretrial.

The information in the record contains an argument of the issue which could be analyzed.

"For an appellate court to reverse a trial court's denial of mistrial, the defendant must show actual prejudice resulting from the underlying error." *State v. Hernandez*, 17-803, p. 6 (La.App. 3 Cir. 3/7/18), 241 So.3d 1053, 1058. The defendant has not demonstrated that his case was actually prejudiced by the testimony regarding shots possibly being fired by the defendant earlier in the evening.

12

There was no objection to Detective Fontenot's testimony that the defendant was shooting in the area before the shooting of C.V. The objection focused on the alleged act of shooting at a dog. The detective's mention of this point, along with the testimonies of the three eyewitnesses noted earlier in this opinion, made the jury aware that the defendant had already been shooting in the area before he shot the victim. As discussed under the first assignment of error, the state also presented eyewitnesses who testified the defendant shot the victim.

Through its eyewitnesses, the state presented solid evidence of guilt. It is not clear how the testimony that there was a previous shooting incident would have had an appreciable influence on the case. The defendant suggests it potentially influenced the weight or credibility of the evidence. It is not clear how it would have had any more influence than the evidence of the defendant's act of shooting in the area. As noted, the jury had already been made aware that the defendant was shooting in the neighborhood before he shot the victim.

This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth and final assignment of error, the defendant argues that the district court erred by allowing inadmissible hearsay into evidence. As he notes, Detective Fontenot testified that Mrs. Fontenot asked to speak with him at the police station. At the station, she told the detective that she heard gunshots in the road, she saw her nephew and another juvenile riding bicycles, and she heard her nephew asking "Xa" why he was shooting. The defendant then objected, and the court sustained the objection. The detective went on to say that Mrs. Fontenot witnessed the shooting, and the defendant told her he did it because "they were fucking with me." The defendant objected, and the court again sustained the objection.

13

Regarding Detective Fontenot's exposition of Mrs. Fontenot's statements, there is nothing for the court to review. Trial counsel made hearsay objections, and the district court sustained them. Further, Mrs. Fontenot testified at the trial and presented the same testimony to the jury. She was subject to cross-examination by defense counsel on these statements. Therefore, this argument lacks merit.

Detective Fontenot also spoke to Elvin Thomas. As discussed in the previous assignment of error, the detective testified that Thomas told him that the defendant had been shooting in the neighborhood and may have fired at a dog. The objection that the defendant raised is the "other bad acts" evidence discussed previously and was not based on hearsay. As there was no hearsay-based objection to Thomas's testimony, this argument lacks merit.

Finally, the defendant complains that Detective Fontenot testified about information he received from the defendant's girlfriend, Tori Janice. However, appellate counsel concedes that trial counsel did not object to this testimony. As the defendant failed to make a contemporaneous objection, the issue was not preserved for review. La.Code Crim.P. art. 841(A).

As all of the defendant's arguments under this assignment fail for the reasons discussed, this assignment of error lacks merit.

## CONCLUSION

The defendant's conviction and sentence are affirmed.

**AFFIRMED.**