STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-399 c/w 11-400

STATE OF LOUISIANA

VERSUS

WAYNE K. JONES, JR.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22024-08
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; AND REMANDED WITH INSTRUCTIONS**

Peggy J. Sullivan
P.O. Box 2806
Monroe, LA  71207-2806
COUNSEL FOR DEFENDANT/APPELLANT:
    Wayne K. Jones, Jr.

John F. Derosier, District Attorney
David Palay, Assistant District Attorney
Carla S. Sigler, Assistant District Attorney
1-20 Ryan St.
Lake Charles, LA  70601
COUNSEL FOR APPELLEE:
    State of Louisiana

**PAINTER, Judge.**

Defendant, Wayne K. Jones, Jr., appeals his conviction for attempted second degree murder. Finding that the evidence was sufficient to support the conviction, we affirm, vacate the habitual offender sentence, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On October 8, 2010, at about 4:18 p.m., Corporal Dwayne Petroski of the Lake Charles Police Department was dispatched to 2013 9th Street where he found Kesiah Melbert in the passenger seat of a vehicle. He discovered that she had been shot several times.

On January 29, 2010, Wayne K. Jones, Jr., Defendant, was convicted of one count of attempted second degree murder, in violation of La.R.S. 14:27 and La.R.S. 14:30.1, and one count of aggravated assault with a firearm, in violation of La.R.S. 14:37.4.

The testimony at trial established that the victim and Defendant had recently broken up. Defendant's sister, Adrienne Jones Johnson, helped him retrieve his belongings from the apartment he had shared with the victim and taken them to her house. Among those possessions was the dog the two had shared. On October 8, the victim, along with her sister, Miesha Melbert, went to Johnson's house to get the dog back. Johnson called Defendant, and he told her not to let the victim take the dog. A short time later, he arrived at the house and blocked the victim's vehicle so that she could not drive away. He approached the vehicle carrying a handgun. Johnson tried to tell him that the victim did not have the dog. Defendant fired the gun into the back window of the car, moved to the driver's door and shot again, walked around the car and fired into the passenger's side of the windshield, then moved again and fired into the passenger's window. The incident took less than a minute, and then Defendant left. The victim got out of the car and only realized

1

she had been shot when her sister told her. Johnson called 911 as Defendant was driving away.

Corporal Petroski testified that when he arrived on the scene and approached the women, he noticed that there was a blood spot on Kesiah's back just below the lung area. Corporal Petroski raised Kesiah's shirt and saw a small bullet hole on the right side of her back. Corporal Petroski asked Kesiah to exit the vehicle and move to the ground so he could better render aid. Kesiah moved to the ground, and Corporal Petroski asked Johnson to get some clean rags. When she returned, Corporal Petroski used the rags to compress the wound. As he was attending to the first wound, Kesiah mentioned that her lower backside was also hurting

Corporal Petroski said that he looked down and saw another blood spot on Kesiah's left buttock. He informed Kesiah that he was going to inspect the area. When he did, he saw two additional holes in Kesiah's buttock. Corporal Petroski could not tell if the wounds were caused by two separate bullets or one bullet's entry and exit. Corporal Petroski used another rag to put pressure on those two wounds. Corporal Petroski spoke with Kesiah while they waited for an ambulance to arrive. Kesiah told him that Defendant was her ex-boyfriend, that she had arrived at the house to pick up a dog, that the disagreement over the dog had started the incident, and that Defendant inflicted the wounds. The ambulance arrived, and Corporal Petroski backed away and let them attend to Kesiah.

Detective Corporal David Rupf with the Lake Charles Police Department was assigned to investigate the shooting that occurred at 2013 9th Street on October 8, 2008. Corporal Rupf testified about the crime scene and the crime scene photographs. The photographs showed that the victim's car had bullet holes in the rear driver's side window, front driver's side window, the passenger's side windshield, and the front passenger's side window. The photographs also showed

2

an unfired bullet and empty shell casings dispersed around the car. The images also showed a bullet hole in the dashboard, broken glass inside the car, a brass-colored bullet jacket on the floorboard of the car, and a dog kennel in the rear passenger's seat. The photograph of the rear driver's side compartment showed a butcher's knife on the seat, blood stains on the back seat, and two holes in the back of the driver's seat.

Following Defendant's conviction, the State filed a habitual offender bill under a separate docket number alleging that Defendant was a third felony offender. Defendant appeared for his habitual offender hearing on October 6, 2010. After considering the evidence presented, the sentencing court found Defendant to be a third felony offender and ordered Defendant to serve life imprisonment without benefit of probation, parole, or suspension of sentence.

In docket number 11-399, Defendant appeals his conviction. In docket number 11-400, Defendant appeals his habitual offender sentence. On motion by Defendant's counsel, these cases were consolidated for briefing purposes. Defendant raises one assignment of error in his consolidated brief: "The evidence adduced at trial was insufficient to support the conviction of attempted second degree murder."

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, the court reviews all appeals for errors patent on the face of the record. After reviewing the records, we find two errors patent.

The trial court imposed an indeterminate sentence. The State charged Defendant as a habitual offender and sought to enhance both convictions. At the habitual offender hearing, the State announced it was ready to proceed with the

habitual offender bill after Defendant had been convicted of attempted second degree murder and aggravated assault. At the conclusion of the presentation of evidence by the State, the trial court found in pertinent part:

> I'm satisfied as to the identity of Mr. Jones based on the testimony and the evidence presented [sic] the identity of Mr. Wayne Kevin Jones as the person who has been convicted of these prior offenses and he is the same person who was convicted of the incident [sic] offense that we're here for sentencing on.
>
> . . . .
>
> Mr. Jones is a third felony offender for purposes of the habitual offender law and I will sentence him . . . to serve the remainder of his natural life in prison.
>
> The court minutes accurately reflect the transcript.

In *State v. Bessonette*, 574 So.2d 1305, 1306 (La.App. 3 Cir. 1991), the court explained in pertinent part: "Where a record fails to reflect that a defendant has been sentenced on all counts against him, the sentence imposed is rendered invalid. See *State v. Brady*, 506 So.2d 802 (La.App. 1 Cir. 1987), appeal after remand, 524 So.2d 1356, writ denied, 532 So.2d 175 (La.1988)."

The trial court imposed only one sentence although Defendant was convicted of two offenses. Additionally, it is unclear whether the trial court intended to enhance one or both convictions. Regardless, a sentence must be imposed on each separate conviction. Consequently, the habitual offender sentence is vacated, and the matter is remanded to the trial court for resentencing. The trial court is ordered to clarify which count or counts it is enhancing and to impose separate sentences for each conviction. *See State v. Webster*, 95-605 (La.App. 3 Cir. 11/2/95), 664 So.2d 624.

Next, the record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code

4

Crim.P. art. 930.8. Therefore, the court is directed to inform Defendant of the provisions of article 930.8 at resentencing.

*Sufficiency of the Evidence*

Defendant argues that, "The evidence adduced at trial was insufficient to support the conviction of attempted second degree murder." Defendant alleges that the State failed to prove that he had the requisite specific intent to kill. Defendant claims that, because they were so close to each other, the victim would have been dead if he had intended to kill her.

The Louisiana Supreme Court has discussed the standard of review for evaluating the sufficiency of the evidence on appeal:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

Defendant argues that he did not have the specific intent to kill Kesiah and that specific intent is a necessary element of attempt:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

5

La.R.S. 14:27(A). "Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1.

The evidence most favorable to the prosecution shows that Defendant blocked in Kesiah's car with his own. He then exited his vehicle with a gun in his hand, approached Kesiah's vehicle, and began firing through the windows at the occupants inside. As Kesiah moved around inside the automobile to get away from the gunfire, Defendant walked around the vehicle to get a clearer shot; each time Defendant obtained a clearer shot, Defendant fired again. Though Defendant did not succeed in killing Kesiah, multiple bullets struck her and had to be surgically removed. At least one of the bullets had to be removed from Kesiah's chest. Defendant had threatened to kill Kesiah the night before; he also acted on the threat by getting a gun and driving back toward Kesiah's location, although he stopped when he saw law enforcement at Kesiah's location.

This court has held that evidence showing that a defendant fired a gun at someone multiple times is sufficient to support a conviction for attempted second degree murder:

> Specific intent may be established by the circumstances surrounding an accused's actions. *State v. Anderson*, 98-492 (La.App. 3 Cir. 10/28/98), 721 So.2d 1006, *writ denied*, 98-2976 (La. 3/19/99), 739 So.2d 781. It is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person. *State v. Pierre*, 02-277 (La.App. 3 Cir. 6/11/03), 854 So.2d 945, *writ denied*, 03-2042 (La. 1/16/04), 864 So.2d 626; *State v. Reed*, 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied*, 02-1313 (La. 4/25/03), 842 So.2d 391; *State v. Clark*, 93-1470 (La.App. 3 Cir. 10/5/94), 643 So.2d 463, *writ denied*, 94-2715 (La. 2/9/95), 649 So.2d 418. Testimony established that each shooter, Defendant and Fontenot, fired their guns three to four times at the intended victim.

*State v. Thomas*, 10-269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, __U.S. __, __ S.Ct. __ (2011).

By aiming his gun at Kesiah and firing multiple shots at her, Defendant exhibited the specific intent to kill that is required by La.R.S. 14:27. Therefore, when the evidence is viewed in the light most favorable to the prosecution, there is sufficient evidence to support Defendant's attempted second degree murder conviction.

Accordingly, this assignment of error is without merit.

## CONCLUSION

Defendant's convictions are affirmed. However, because Defendant's habitual offender sentence is indeterminate, the habitual offender sentence is vacated and remanded to the trial court for resentencing. The trial court is directed to clarify which count or counts it is enhancing and to impose separate sentences for each conviction.

Additionally, the trial court is directed to advise Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8.

**AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; AND REMANDED WITH INSTRUCTIONS**.

7