# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-864

STATE OF LOUISIANA
VERSUS
WAYNE KEVIN JONES

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 20609-10
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**CONSOLIDATED FOR BRIEFING PURPOSES WITH**

### 12-863

STATE OF LOUISIANA
VERSUS
WAYNE K. JONES, JR.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22024-08
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED.**

**John F. DeRosier**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Post Office Box 3206**
**Lake Charles, LA   70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2806**
**Monroe, LA   71207**
**(318) 855-6038**
**(318) 387-6124**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Wayne K. Jones, Jr.**

**AMY, Judge.**

A jury convicted the defendant of attempted second degree murder and aggravated assault with a firearm. A panel of this court affirmed the defendant's conviction for attempted second degree murder. However, the matter was remanded for re-sentencing on the defendant's ultimate status as an habitual offender given a finding that the original sentence was indeterminate. On remand, the trial court adjudicated the defendant a third felony offender on both the attempted second degree murder conviction and the aggravated assault with a firearm conviction. The trial court imposed concurrent life sentences for each adjudication. The defendant appeals the sentences as excessive. For the following reasons, we affirm.

## Factual and Procedural Background

The State provided evidence indicating that an altercation involving the defendant, Wayne Jones, and his former girlfriend arose over possession of a dog the defendant claimed was his property. The State asserted that the defendant blocked the vehicle of his former girlfriend with that of his own and, after exiting his own vehicle with a gun, fired numerous shots into her vehicle. The victim was shot multiple times, including one shot which lodged in her chest.

In January 2010, a jury convicted the defendant of one count of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1, and one count of aggravated assault with a firearm, a violation of La.R.S. 14:37.4, in relation to these events. Thereafter, and acting upon the State's habitual offender bill, the trial court found the defendant to be a third felony offender. It ordered the defendant to serve life imprisonment without benefit of probation, parole, or suspension of sentence.

The defendant filed separate appeals from the convictions and from the habitual offender proceedings. The matters were consolidated on appeal for briefing purposes.

In the original appeal, a panel of this court found no merit in the defendant's sole assignment of error regarding the sufficiency of the evidence offered in support of the attempted second degree murder conviction. *See State v. Jones*, 11-399 (La.App. 3 Cir. 11/2/11), 76 So.3d 1274. However, on error patent review, the court determined that the trial court imposed an indeterminate sentence on the habitual offender proceedings. *Id.* It noted that the State charged the defendant as a habitual offender and sought to enhance both convictions, but that the language employed by the trial court in doing so lacked indication that the defendant was sentenced on both counts. *Id.* Accordingly, the court vacated the habitual offender sentence originally imposed and remanded the matter to the trial court for resentencing. *Id.* It instructed the trial court to clarify which count or counts it was enhancing and to impose separate sentences for each. *Id.*

Pursuant to the appellate order, the trial court resentenced the defendant in May 2012. The transcript of the hearing indicates that the trial court found the defendant to be a third habitual offender on each underlying charge and sentenced him to life imprisonment on each. The trial court ordered that the sentences are to run concurrently.

The defendant appeals[1] and, in his sole assignment of error, the defendant asserts that: "The sentences of life in prison on each count, even though ordered to be served concurrently, are excessive under the facts and circumstances of this case."

---

[1] The defendant's proceeding involves two appellate records lodged with this court. The appeal in docket number 12-864 involves the habitual offender adjudication, whereas the companion case, *State of Louisiana v. Wayne K. Jones, Jr.*, 12-863 (La.App. 3 Cir. _/_/13), _So.3d _, involves the appeal from the defendant's convictions. Upon the defendant's motion, the matters were consolidated for briefing purposes. As reflected above by the defendant's sole assignment of error, the defendant does not challenge his underlying convictions which were previously affirmed by a panel of this court. *See State v. Jones*, 76 So.3d 1274. Thus, the defendant's appeal in docket number 12-863 is rendered moot.

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the face of the record. The record contains no such errors.

*Excessiveness of the Sentences*

In a single assignment of error, the defendant asserts that the two concurrent life sentences imposed are excessive. As noted by the State, the defendant in this case only lodged an objection to the sentence insofar as, after sentencing, defense counsel stated: "Your Honor, we object to the Court's ruling." The defendant did not file or otherwise make a motion to reconsider his sentences as required by La.Code Crim.P. art. 881.1.[2] *See State v. Barling*, 00-1241 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035 (wherein a panel of this court concluded that the failure to file a written motion to reconsider sentence or to orally urge a specific ground for reconsideration at sentencing precludes the defendant from objecting to the sentence imposed pursuant to La.Code Crim.P. art. 881.1), *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. In a case such as the present one, where a defendant's verbal objection did not set forth specific grounds to support the claim of excessive sentence, the court is relegated to a bare claim of excessiveness on review. *Id. See also State v. A.B.M.*, 10-648 (La.App. 3 Cir. 12/8/10), 52 So.3d 1021.

On remand, the trial court imposed consecutive life sentences after it adjudged the defendant a third habitual offender on two counts. This sentence is within the

---

[2] Article 881.1(E) provides that:

Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

3

permissible sentencing guidelines of La.R.S. 15:529.1(A), which provides, in

pertinent part:

> (3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:

> (a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or

> (b) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

As can be seen by reference to La.R.S. 15:529.1(A)(3)(b),[3] the defendant's life

sentences are, in fact, mandatory.

In *State v. Lindsey*, 99-3302, pp. 4-5 (La. 10/17/00), 770 So.2d 339, 342-43,

c*ert. denied*, 532 U.S. 1010, 121 S.Ct. 1739 (2001), the supreme court explained as

follows with regard to the mandatory nature of the habitual offender law:

> The Legislature enacted the Habitual Offender Law pursuant to its sole authority under Article 3, § I of the Louisiana Constitution to define conduct as criminal and to provide penalties for such conduct. *State v. Johnson,* [97-1906 (La.3/4/98), 709 So.2d 672], 675; *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993); *State v. Taylor*, 479 So.2d 339, 341 (La.1985). This Court has repeatedly held that the statute is constitutional and therefore, the minimum sentences the statute imposes upon multiple offenders are presumed to be constitutional, and should be accorded great deference by the judiciary. *State v. Johnson, supra; State*

---

[3] The State described the underlying felonies as follows:

We had a third offender bill, the predicate offenses being possession of cocaine with intent to distribute in 1995 in the 14th Judicial District Court, and aggravated burglary, two counts of possession of a firearm by a convicted felon, distribution of CDS Schedule II, and that's in a drug-free zone, distribution of CDS Schedule II without that enhancement, and simple escape. That finding was found on March of 2000.

And so those are the predicate felonies that we have for our habitual offender bill in these proceedings.

4

*v. Dorthey, supra.* However, courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution even though it falls within the statutory limits provided by the Legislature. *State v. Johnson, supra* at 676; *State v. Sepulvado*, 367 So.2d 762, 767 (La.1979).

In *State v. Dorthey*, we held that this power extends to the minimum sentences mandated by the Habitual Offender Law and that the trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment" or is nothing more than "the purposeful imposition of pain and suffering" and "is grossly out of proportion to the severity of the crime." *State v. Dorthey*, *supra* at 1280-1281.

Thereafter, in a series of writ grants, we acted to curtail the district court's use of *Dorthey* in cases in which it appeared that the courts were simply substituting their judgment of what constituted an appropriate penalty for that of the Legislature. *See, e.g., State v. Handy*, 96-2505 (La.1/5/97), 686 So.2d 36; *State v. Bastian*, 96-2453 (La.12/13/96), 683 So.2d 1220; *State v. Randleston*, 96-1646 (La.10/4/96), 681 So.2d 936; *State v. Wilson*, 96-1600 (La.10/4/96), 680 So.2d 1169; *State v. Johnson*, 96-1263 (La.6/28/96), 676 So.2d 552; *State v. Gordon*, 96-0427 (La.5/10/96), 672 So.2d 669; *State v. Kelly*, 95-2335 (La.2/2/96), 666 So.2d 1082; *State v. Lombard*, 95-2107 (La.11/27/95), 662 So.2d 1039.

This effort culminated in *Johnson*, where we set out guidelines for when and under what circumstances courts should exercise their discretion under *Dorthey* to declare excessive a minimum sentence mandated by the Habitual Offender Law. We held that "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." *State v. Johnson*, *supra* at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Id.* (Citing *State v. Young*, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring)).

. . . .

In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we

5

instructed that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. *Id*. at 677.

Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. *Id.*

At the May 2012 hearing, the trial court adopted its reasoning from the original sentencing, wherein it set forth the defendant's extensive criminal history, stating:

I made note of the criminal history of Mr. Jones starting in 1995, and by the way Mr. Jones is 32 years old, born January 4, 1978.

On March 16, 1995, possession of CDS -- he was arrested. I mean he's got such a long history of arrests. Possession of CDS Schedule II with intent to distribute. A month later possession of marijuana, distribution of drug paraphernalia. A couple weeks later he was arrested for possession CDS II with intent to distribute.

In 1996 unauthorized use of a motor vehicle, simple criminal damage to property, resisting an officer, flight from an officer, no driver's license.

In 1995 distribution of cocaine in a drug-free zone. By the way I'll say from April 29, 1995, possession of CDS II with intent to distribute. He received five years. That's one of the bases for the habitual offender bill, five years D.O.C, suspended. He was put on five years probation and his probation was revoked subsequently.

The distribution of cocaine in a drug-free zone from 1998. It says that on March the 20th of the year 2000 he received 12 years in the Department of Corrections. That's not even a part of this habitual offender bill, or is it? Yeah, maybe it is. Yeah, it is, it is. I'm sorry. Twelve years Department of Corrections.

Again in 1998 some other drug charges he was arrested for. Again in '98 an arrest for drug charges and again in '98 flight from an officer and some other matters. Again in 1998 distribution of cocaine, four counts, and he got 12 years on that and it was run concurrently with the other charges he was arrested for 1998.

In 1999 aggravated kidnapping, possession of a firearm by a convicted felon, and stalking. Three days later, March 24, 1999, aggravated burglary, attempted aggravated kidnapping, resisting an officer, possession of a firearm by a convicted felon. He pled guilty to

6

the aggravated burglary, received eight years in the Department of Corrections and he pled to possession of a firearm by a convicted felon, I guess both counts of that, and he got ten years D.O.C. The other charges were dismissed.

Again in 1999 he had a simple escape, simple criminal damage, unauthorized entry of an inhabited dwelling.

Then in 2008 he was arrested for the charges that he was convicted on back in January, which is attempted second degree murder, aggravated assault with a firearm, possession of a weapon by convicted felon, and the possession of a weapon by a convicted felon was taken up or referred to federal court, or it was referred to federal court by the State.

And as I was looking at some of these factual scenarios that were in the presentence report with regard to the other crimes of violence it's just a disturbing pattern. Mr. Jones, I don't know where his anger and his jealousy and his violent nature comes from, but it's very fortunate at this time that Mr. Jones hasn't killed anybody and if Mr. Jones didn't go to prison or if he ever gets out of prison the likelihood that he's going to kill somebody given his history of drug abuse, drug dealing, I mean he's a drug dealer based on his convictions and his crimes of violence involving his jealousy when it comes to other -- his ex-girlfriends, which is what happened back in 1999 involving a gun and then involving this case where he actually shot. He's lucky he didn't kill his girlfriend and/or her sister. He shot his ex-girlfriend twice over a dog, or actually as we found out later it wasn't over a dog, it was because he saw her with somebody else, and his own brother testified that he went home to get his gun and he was going to come back and try to kill his ex-girlfriend and the new boyfriend or the new guy she was with, but the police were there when they got there so they didn't stop.

Mr. Jones is somebody unfortunately or fortunately, you know, that the habitual offender law was tailor-made for, somebody that's too violent and too dangerous to live in our society among, you know, law-abiding citizens and he's never learned how to obey the law. He's had guns when he wasn't supposed to, he's had drugs and sold drugs without any concern for anybody but himself. Everything he's been arrested for here is evidence that he has no concern for anybody but Wayne Jones and he even says in here, his sister came in to testify, she had cancer if you recall that, and I think she was getting treatment for it and she came in and testified and he's saying that she's making that up. She tried to save him from himself, Mr. Casanave, and he wouldn't listen. She pleaded with him to put the gun down and he wouldn't listen and she came in here and told the truth, and then the other people, all the witnesses who know him well told what happened and he continues to lie about it and say it wasn't me, I wasn't involved with that.

So there's no other choice in this case, even if life wasn't the only option that I had as far as the law is concerned, even if I thought justice

necessitated it then maybe I would consider deviating downward, but I think justice actually requires this sentence and if life was not an option then I would have to based it [sic] on Mr. Jones' history. Just to protect society from him I'd have to give him whatever the maximum would be under the law and so having said that to the extent its necessary with this sentence that I have to I would say that I have considered the aggravating and mitigating factors as set forth in Article 894.1 of the Code of Criminal Procedure and I find that there is nothing to mitigate in favor of Mr. Jones whatsoever and the maximum sentence is what's required, which in this case there is no minimum or maximum, it's life in prison and so I do find based on all the evidence presented in the testimony that Mr. Jones is a third felony offender for purposes of the habitual offender law and I will sentence him as I said to serve the remainder of his natural life in prison.

In his brief to this court, the defendant does not demonstrate in what way the trial court was required to find that a downward departure of the mandatory life sentences was warranted in light of *Lindsey*, 770 So.2d 339 and the underlying supreme court jurisprudence. Although he asserts that he was relatively youthful at the time of the shooting and that the incidents arose from romantic difficulties and from the potential loss of possession of a pet, we conclude that these suggested factors fall far short of the standard discussed in *Lindsey*. Accordingly, we find no abuse of the trial court's discretion in imposing the mandatory life sentences required by the sentencing dictates of La.R.S. 15:529.1(A)(3)(b).

This assignment lacks merit.

## DECREE

For the foregoing reasons, the defendant's sentences are affirmed.

**AFFIRMED.**